T. W. DAVIS, Respondent, v. FRANK AKERS *et al.*,
Appellants.

St. Louis Court of Appeals, February 15, 1898.

1. **"Lease" So-called**: CONSTRUCTION: VALIDITY.   An instrument
purporting to be a lease of certain premises, whereby the lessee so-
called was not to take possession of the premises, but the pretended
lessor was to remain in possession, receive one third of the crops for
his labor, and keep up repairs, given to secure a debt upon which was
confessed usurious interest was charged and paid, was not a lease,
but a chattel mortgage on future crops, and void under the
statute.

2. **Evidence.**   The defendants were in no position to complain of the
rulings of the court on the admission or rejection of irrelevant testi-
mony invited by them.

*Appeal from the Newton Circuit Court.*—HON. J. C.
LAMSON, Judge.

AFFIRMED.

*Joseph French* and *W. Cloud* for appellants.

Plaintiff must maintain his suit wholly on the
strength of his claim.   The descriptive clause of his

mortgage is indefinite in that it does not specify the year in which the crops are "to be grown," nor otherwise designate any particular crops which may be claimed under it. *Pennington v. Jones*, 57 Iowa, 37.

The covenant by which Stockstill bound himself to cultivate the land for the defendant bank, for the consideration named in the lease, was reasonable and not repugnant to law or public policy. The crops grown upon the land so leased during the term would be the property of the bank, and could not be mortgaged by Stockstill to another. *Kamerick v. Castleman*, 23 Mo. App. 481.

The court erred in admitting, for the purpose of defeating the leasehold of the bank, the unrecorded deeds to the plaintiff, of which the defendant had no notice. R. S. 1889, sec. 7453.

The lease is neither a chattel mortgage nor descriptive of a pledge, and the court erred in admitting testimony in regard to the payment of interest in excess of the legal rate; also in instructing the jury that if it was found that a rate of interest in excess of eight per cent was paid, the lease was void. Sess. Acts 1891, "Interest," sec. 2, p. 171.

*George Hubbert* for respondent.

The respondent's rights were superior in every respect. A parol chattel mortgage is valid, and a mere oral agreement to give such mortgage will be enforced in equity. Jones on Chat. Mort., sec. 2, 3. See, also, *Id.*, secs. 143, 174; *Edmonston v. Wilson*, 49 Mo. App. 491; Jones on Chat. Mort. [4 Ed.], secs. 140, 141; *Booker v. Jones*, 55 Ala. 226.

Appellants' "lease" contract was at most only a chattel mortgage security for a debt tainted with usury and subject to all the rules applicable to such mort-

gages. Bouv. Law Dic. Per. Prop.; 1 Schoul. on Per. Prop. [1 Ed.], p. 28; 2 Black. Com. 386; 2 Kent Com. 341, 342; R. S. 1889, sec. 6368; Will. on Per. Prop. [4 Am. Ed.], p. 2; Schoul. on Per. Prop. [1 Ed.], p. 45; R. S. 1889, sec. 4954; Wash. Real Prop. [2 Ed.], book 1, ch. 1, sec. 17; Will. Real Prop. [17 Ed.], p. 28; *Cobb v. Day*, 106 Mo. 295; *Cooper v. Brock*, 41 Mich. 488; *Hargadine v. Henderson*, 97 Mo. 386; Am. and Eng. Ency. Law, Chat. Mort. [2 Ed.] 950, 954.

The so-called "lease" does not on its face constitute or convey to the bank a leasehold interest. 12 Am. and Eng. Ency. Law, title "Lease," p. 976; *Boom v. Stover*, 66 Mo. 434; *Johnson v. Hoffman*, 53 *Id*. 508.

The usurious acts of the bank officers rendered their chattel mortgage security void. Laws 1891, p. 170. See, also, *Voorhis v. Stead*, 63 Mo. App. 370; *Johnson v. Simmons*, 61 *Id*. 396; *Rubber Co. v. Wilson*, 55 *Id*. 656.

BLAND, P. J.—The plaintiff filed the following petition:

"In the circuit court of Newton county, Missouri.

T. W. Davis, plaintiff,

vs.

Frank Akers and Sam Cotter, and with Pierce City National Bank as voluntary—Defendants.
} Replevin.

"Plaintiff above named states that by virtue of a chattel mortgage duly made, executed and recorded, from W. D. Stockstill, to plaintiff, and dated April 22nd, 1895, the plaintiff is the owner and entitled to the possession, as against the above named defendants, of the personal property described as follows: The wheat that was grown upon, and which has been cut and put into shocks, on fields within the limits of lands

described as follows: The N. W. qr. of sec. 27, township 25, range 29. The east half of N. E. qr. and northeast qr. of S. E. qr., and southeast qr. of S. W. qr. and northeast qr. of S. W. qr., and north half of N. W. qr. in section 34, township 25, range 29, and thirteen acres on the west end of sec. 5, township 29, comprising the farms occupied by W. D. Stockstill, in Newton county, Missouri; all of the value of $400, as it stands in the shock, estimated at one thousand bushels.

"That notwithstanding such right and ownership of the plaintiff, the defendants respectively, but without writ or process against the plaintiff or his property, wrongfully seized and took exclusive possession of all of said property on the ——— day of June, 1895, and they have continuously since that date wrongfully withheld, and they withhold, the said property from the plaintiff, against his demand made therefor, and to his damage in the sum of one thousand dollars.

"Plaintiff prays judgment for the possession of said property and for one thousand dollars, and for the cost of this action."

A writ of replevin was issued, delivery bond given, and the plaintiff was put in possession of the wheat. The defendants Akers and Cotter by their answer admitted possession of the wheat, and pleaded specially that Akers was sheriff of Newton county, and that an execution had been issued and delivered to him by the clerk of the Newton circuit court in favor of the Pierce City National Bank against W. D. Stockstill, by virtue of which he had levied upon the wheat as the property of said Stockstill for the purpose of satisfying said execution, and had put defendant Cotter, his deputy, in possession of the wheat to hold under the levy, and alleged the title to the wheat to be in Stockstill at the date of the levy. The defendants also averred that the

Pierce City National Bank, as plaintiff in the execution, was the real party in interest, and asked that it be made a party defendant. On motion of the bank this was done, and for its separate answer stated that Stockstill, on September 24, 1894, was indebted to it in the sum of $4,320, and that on said date Stockstill being the owner and in possession of the premises (described in plaintiff's petition) executed to it a lease upon all of said lands for a term of fifteen months from September 24, 1894, in consideration of his indebtedness to to the bank. The answer further states that Stockstill in the year 1895 (during the life of the lease) raised on the premises a large quantity of wheat, corn, oats and hay; that at the May term, 1895, of the Newton county circuit court, Stockstill's indebtedness was reduced to judgment and execution issued thereon and placed in the hands of defendant Akers as sheriff of the county, and the wheat in controversy was levied on, being a portion of the wheat grown on lands leased by Stockstill to the bank in the year 1895. The bank for further answer stated that the pretended chattel mortgage under which the plaintiff claimed the wheat, was executed and delivered by Stockstill to plaintiff for the purpose of hindering, delaying and defrauding the creditors of Stockstill, and especially the bank. A reply was filed, denying that title to the real estate described in the lease of Stockstill to the bank was in Stockstill at the date of the execution of the lease, and averring ownership in plaintiff Davis; denied the validity of the lease, and averred that it was obtained by false pretenses, imposition and fraud.

A trial was had, resulting in a verdict and judgment for plaintiff, from which after unsuccessful motions in arrest and for new trial, defendants appealed.

Appellant has brought his case here under the second alternative of section 2253, Revised Statutes

1889, and filed a printed abstract of the bill of exceptions. On page 21 of this abstract is a printed paster referring to an appendix for a copy of the chattel mortgage executed by Stockstill to Davis. His abstract is complete without this reference and appendix, as it refers to the mortgage as described in the petition. The respondent takes exception to this reference paster and appendix, and contends that the appendix copy of mortgage can not be incorporated in the record by the paster. In this contention we think he is correct, as it appears that the paster and appendix are inserted for the purpose of calling the attention to an alleged defect in the mortgage. The mortgage should have been set out in full, or so much thereof as was necessary to fully inform the court of its alleged deficiency in the abstract proper. Not being so set out, and the respondent denying the correctness of the printed appendix, and the appellant having failed to bring up the bill of exceptions in full, we are compelled to take the abstract statement, that the mortgage was as described in the plaintiff's petition.

The so-called lease from Stockstill to the bank shows on its face and is proven by the testimony of Scott, the president of the bank who wrote the instru-

"LEASE" so-called: construction: validity.

ment and procured Stockstill to sign it, to have been not a lease, but an attempt to mortgage the future products of the land for the payment of Stockstill's indebtedness to the bank. The bank was not to take possession of the premises under the instrument, but Stockstill was to continue in possession, receive one third of the crops for his labor, and to keep up repairs. Scott testified that the purpose of the instrument was to secure Stockstill's indebtedness to the bank. Such an instrument is not a lease; if it had any validity at all, it was a chattel mortgage on future crops. Being such an instrument,

given to secure a debt upon which it is confessed usurious interest had been charged and paid, it was void under the statute. Some evidence was introduced tending to prove that the mortgage from Stockstill to Davis was made for the purpose of hindering and delaying the creditors of Stockstill. There was much evidence that the transaction was *bona fide* and to secure a just and subsisting debt. The court properly and fully instructed the jury upon all the issues made by the pleadings for both plaintiff and defendants. There was a good deal of irrelevant evidence introduced by both sides, which served no useful purpose, but we are unable to say that appellant was prejudiced thereby; in fact, much of this irrelevant testimony was offered by the appellants, and they are in no position to complain of it, or of the rulings of the court on the admission or rejection of this character of testimony, the error having been invited by them. Discovering no reversible error in the record, the judgment is affirmed. All concur.